IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA

v.                                                          Criminal Case No. 4:24cr1-005

JA'MICA DANIELLE LANGLEY,

      Defendant

### POSITION OF DEFENDANT WITH RESPECT TO SENTENCING

COMES NOW, the Defendant, JA'MICA DANIELLE LANGLEY, by and through counsel, and files this position with respect to the sentencing factors and material facts set forth in the presentence report.  The Defendant agrees with the government and Probation that the total offense level in this case should be level 40.  With a criminal history category of II, her advisory guideline range is appropriately calculated as 324-405 months.  Ms. Langley has stipulated to the offense with an agreed statement of facts, has entered a plea of guilty, participated in the preparation of the presentence report, and has otherwise fully accepted responsibility for her conduct.

Defendant asserts that a sentence even at the low end of 324 months is far greater than necessary to reflect the sentencing factors listed in 18 U.S.C. § 3553(a).  The Defendant therefore requests that the Court impose a sentence of 200 months, which is below the low end of

1

the advisory guideline range.  This pleading intends to address the reasons for this request and downward variance from the guidelines.

### Background

Ms. Langley was indicted by the grand jury on April 10, 2024 with a second superseding indictment charging her with one count of Kidnapping Resulting in Death pursuant to 18 U.S.C. § 1201(a)(1) and (2), and one count of Conspiracy to Commit Kidnapping pursuant to 18 U.S.C. § 1201(c).  The United States provided notice of special findings pursuant to 18 U.S.C. 3591 and 3592 due to the death resulting from these offenses.  She entered a plea of guilty to Count Two of the indictment pursuant to a written plea agreement on July 2, 2024.  In that plea agreement, Ms. Langley agreed to pay properly calculated restitution due to the victim(s) of this conduct, although the PSR confirms that the United States has not provided any proposed restitution amount or order at this time.  There is no victim impact testimony or information available at this time.

### Argument

The Defendant's position regarding the sentencing guidelines recommended in her case is that the guidelines reflect a sentence greater than that which is needed to address the factors listed in 18 U.S.C. § 3553(a).  In *United States v. Booker*, the Supreme Court held that sentencing guidelines are not mandatory for a trial court to follow and are merely advisory. 543 U.S. 220 (2005).  Pursuant to 18 U.S.C. § 3553(a) "The court shall impose a sentence sufficient, but not greater than necessary, …" and in addressing the need for the sentence imposed the Court, shall consider—

> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> **(B)** to afford adequate deterrence to criminal conduct;
>
> **(C)** to protect the public from further crimes of the defendant; and
>
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;"

18 U.S.C. § 3553 (a)(2).

The Court should consider all of the 3553(a) factors to determine a sentence and, "must make an individualized assessment based on the facts presented." Gall v. United States, 552 U.S. 38, 50 (2007). "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Id., at 52, (quoting Koon v. United States, 518 U.S. 81, 98, (1996)).

The advisory guideline range in this case equates to an exorbitant sentence in prison for Ms. Langley. For her, 324 months is the equivalent of more than 100% of the life she has lived thus far. The guideline range comes primarily from the offense level, which is understandably high given the violent nature of this crime and the death which resulted. However, it does not fully account for Ms. Langley's limited role in the death, nor does it adequately address several of the factors set forth in 18 U.S.C. § 3553(a). Counsel urges the Court to pay particular attention to the following factors, which are especially instructive in this case:

**1. Nature and Circumstances of the Offense**

The series of events which led to the death of T.M., a fellow gang member of Ms.

3

Langley and her associates, are horribly tragic. This was a senseless and violent offense that involved planning and logistics; it is fair to say that any member of the team who chose to inflict injury on T.M. could have stopped at many moments along the way. Any of them could have had a moment of conscience to either remove him or herself from the crime, or stop the crime altogether. This entire series of events, beginning with gang recruitment and membership, then escalating to the related criminal acts associated with street gangs to include robbery, drug distribution, and crimes against the person, is worthy of serious punishment by this Court. There is no question that the nature and circumstances of this offense warrant harsh penalties against every individual who participated.

     However, it is important to consider each defendant's role in the offense as well as his or her relative role in the gang itself. According to the PSR, the victim of this offense was the highest-ranking female of the Black P. Stone Nation set known as the Vietnam Blakk5stone Gorillas Tribe. She chose to participate in a life of gang violence, as did the conspirators who ultimately killed her. The common thread between the victim and the defendants in this case was their membership in the same gang. The PSR and statement of facts in this case further reveal that the entire kidnapping and murder stemmed from a gang-related beating of the victim. As the Court is aware, gang membership often comes with punishment for failure to follow "rules" or for disrespecting other gang members and leaders. Although the PSR and statement of facts group "the defendant and her coconspirators" or "the conspirators" as the perpetrators of certain acts or makers of certain decisions, it is important to note that the defendant herself is never alleged to have been the mastermind or leader of this operation. There is no allegation that Ms. Langley, for example, ever drove a car in the course of a crime, or possessed or discharged a

4

firearm. There is no allegation that she directed any other gang member to do or say anything. The facts as they have unfolded throughout this investigation seem to confirm that at all times, Ms. Langley participated by her presence, and stood by while her fellow gang members shot and killed T.M. and left her body in a remote area.  She does not dispute her criminal liability, and does not even argue that she played a minor or minimal role in the offense, but her level of participation as a follower is certainly mitigating as to the nature and circumstances of the offense.  Through counsel, Ms. Langley will present further argument about her relative culpability and lack of leadership in the gang organization when addressing more about her upbringing.

    **2. History and Characteristics of the Defendant**

While acknowledging the serious nature of her conduct, it is important to then concentrate upon who Ja'Mica Langley is, and how she came to be involved in the criminal life of a street gang in Richmond.

The PSR and a review of Ms. Langley's school and mental health records help to put together a more complete picture of how she arrived in her current situation.  Ms. Langley was born to a mother who had very recently been released from federal prison for an underlying firearm offense and probation violation.  After Ms. Langley was born, she was nearly immediately taken in by an older couple she refers to as her grandparents but who are not biologically related to her. Ms. Langley's mother would sporadically appear in her life, providing no reliable support, until she appeared to take her children back from the couple who had been doing their best to raise the children.  Ms. Langley's younger brother Jaquan, also a member of her same gang and a codefendant in this case, grew up in the same home. At that time, Ms.

5

Langley's mother had addictions and lived a transient lifestyle with little to no financial support. As a result, Ms. Langley was exposed to severe physical, emotional, and sexual abuse. She was raped as a young girl by a man who was ultimately prosecuted and jailed for the sex offense. She received no long-term counseling or mental health care following that incident, and was allowed to remain in her mother's custody.

As the PSR indicates and family members confirm, this was a child raised in a tumultuous, unstable, abusive lifestyle who suffered from ongoing untreated mental health conditions, and those factors predictably worked against Ms. Langley's success going into adulthood. Her school records confirm that she struggled academically and had frequent issues of misbehaving in school. She was first referred for mental health treatment around age 12, based on impulsive and disrespectful behavior at school. Child Protective Services intervened due to her frequent runaway status and her mother having no idea of her daughter's whereabouts. This resulted in her being placed in a group home for an extended period of time, after which Ms. Langley required intensive day treatment for her mental health diagnoses. She has continued to live with mental health conditions, with a high school degree based upon barely-passing grades, and in the same marginalized communities where she was raised. She had a string of labor-equivalent jobs, and has never received trade training or any specialized skills. At the time of her arrest, she was living in temporary housing situations to include staying with friends and in hotels. She was attempting to raise a four-year old autistic child on her own, and she describes her son as the true light of her life.

For all of these reasons, it should come as no surprise that Ms. Langley is the very kind of person likely to be recruited by a gang. She was a woman of modest intellect, limited education,

and lack of financial means. She had no strong ties to a community, no reliable family relationships, and struggled with mental health challenges throughout her life. She suffered from historical abuse that was never fully addressed or treated. She was a likely candidate to be recruited by male gang members, as a person who could use small amounts of money as it became available, and someone who would be a follower instead of a leader. She had needs for basic things such as food, shelter, and transportation. She had never been treated well by the justice system, so she would be unlikely to report crimes that she saw. She was recruited as a gang member, allowed to join, and then participated as an onlooker or follower in multiple acts of gang violence.

The only criminal history points attributed to Ms. Langley in the PSR come from a robbery and shooting case from October 2022 in Richmond. In a set of facts not unlike those before the Court in this case, Ms. Langley was also associated with violent people on October 13, 2022. According to the facts of that case, reviewed in detail by the undersigned counsel, Ms. Langley was romantically involved with the shooter in that case. Video footage showed her nearby when the murder took place, although she did not personally participate in the robbery or discharge of a firearm. While it is disturbing that she participated in another violent crime (even by her mere presence and support) so close in time to this offense, that fact is not surprising given her personal history and lack of mental health treatment. She needs intervention, and any sentence the Court imposes will certainly provide that.

### 3. Deterrence

The Court must consider both general deterrence of other individuals who may consider

7

participating in gang violence in the future, as well as specific deterrence of the Defendant herself. The goal of general deterrence is accomplished by the arrest of conspirators and prosecution in federal court, and Defendant submits that citizens are fully aware of the consequences of gang participation. The problem remains that marginalized citizens are desperate for inclusion, money, and support, and the drive for those things is always balanced against the deterrent effect of criminal liability for being in a gang.

As far as specifically deterring the Defendant, any sentence the Court fashions will be significantly longer than any time she has ever served. At age 25, even a sentence half of the low end of the guidelines will place her in prison for more than half of her life. She will be sufficiently aware of the consequences for her actions in this case. She will have an opportunity to learn a trade, receive mental health treatment, and emerge from prison as a mature woman who has years ahead of her to life a law-abiding, productive life.

### 4. Disparity of Sentences

Another important factor for the Court to consider is avoiding disparity of sentences among others charged in this offense and similar offenses. The Court is certainly extremely familiar with the individuals who have plead guilty to crimes related to this tragic incident, and can determine that certain gang members were leaders and others were followers. While all are responsible for the acts they engaged in as a team, it is important to ensure that each receives a fair sentence based on his or her own relative culpability.

In favor of sentencing Ms. Langley to the least amount of prison time relative to her co-defendants, she would point out that her age, her background, her prompt acceptance of responsibility and admission of guilt, and her presence but lack of active participation in the

8

kidnapping and murder are important facts to consider during this evaluation.  Ms. Langley's plea of guilty occurred at a time that seems to have influenced other gang members, including her own brother, to ultimately plead guilty and avoid a costly trial for the United States.  While she rode in the car for both the ride to Richmond to effect the gang beating and the ride to Yorktown with the victim before her murder, Ms. Langley was a true follower in every scenario.  She failed to intervene during violence, and did not call for help or report the crimes, but she was not the mastermind behind any criminal act.  The United States clearly acknowledges her lesser role in the offense based upon the statement of facts in Ms. Langley's case as compared to those of her codefendants, as well as the very fact that the government elected early in the process not to seek the death penalty against Ms. Langley before making a similar decision for other defendants.  It was clear based upon the investigation that certain defendants made decisions, and either shot the victim or carried firearms, and that Ms. Langley was not one of those defendants.  This is no way calls into question her acceptance of responsibility for her own role, but does inform the Court as to what the appropriate relative sentences should be.

The United States has advised that the Defendant is not eligible for any sentence reduction at this time, so the sentence which she receives is likely to be the actual sentence she will serve.

For the reasons set forth in this position paper, to be further argued during her sentencing hearing, Ms. Langley respectfully requests that the Court sentence her to a sentence which varies downward from the advisory sentencing guideline range.  She argues that a sentence of 200 months would be sufficient, but not greater than necessary, to adequately address the sentencing factors.  She asks that the Court recommend her assignment to a Bureau of Prisons facility as

close to Virginia as possible, and that she be recommended for trade education as well as mental health treatment while she serves her sentence.

Respectfully Submitted,<br>
JA'MICA DANIELLE LANGLEY<br><br>
By:_____/s/_____<br>
Emily Meyers Munn, Esq.<br>
Mark Stokes, Esq.<br>
Counsel for the Defendant

By_____/s/_____
Emily Meyers Munn, Esq.
Virginia Bar # 46390
133 King's Way, Ste. 3000
Hampton, VA 23669
757-723-1991
Emily@emilymunn.law

Mark Stokes, Esq.
200 Bendix Road, Suite 300
Virginia Beach, VA 23452
757-497-6633
mark@markstokeslaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of December, 2024, I electronically filed the foregoing with the clerk of court using the CM/ECF system, which will send a notification of such filing (NEF) to all users of the system.

By_____/s/_____
Emily Meyers Munn, Esq.
Virginia Bar # 46390
Attorney for Defendant
133 King's Way, Ste. 3000
Hampton, VA 23669
757-723-1991 phone
Emily@emilymunn.law